**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JOSEPH SEEDMAN, On Behalf of Himself and All Others Similarly Situated, | ) ) | |
| Plaintiff, | ) ) | Civil Action No.  1:18-cv-11584 |
| | ) ) | |
| v. | ) ) | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| JUNIPER PHARMACEUTICALS, INC., CRISTINA CSIMMA, JAMES A. GERAGHTY, JENNIFER GOOD, MARY ANN GRAY, ANN MERRIFIELD, RICHARD MESSINA, NIKIN PATEL, and ALICIA SECOR | ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

Plaintiff Joseph Seedman ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.     This is a class action brought on behalf of the public stockholders of Juniper Pharmaceuticals, Inc. ("Juniper" or the "Company") against Juniper and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9") and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Juniper will be acquired by Catalent Pharma Solutions,

Inc. ("Catalent") through its wholly-owned subsidiary Catalent Boston, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On July 3, 2018, Juniper issued a press release announcing that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell Juniper to Catalent. Under the terms of the Merger Agreement, on July 17, 2018, Merger Sub commenced the Tender Offer to purchase all outstanding shares of Juniper for $11.50 in cash per share of Juniper's common stock (the "Offer Price"). The Tender Offer is scheduled to expire 12:00 midnight, New York City time, at the end of August 13, 2018. The Proposed Transaction is valued at approximately $139.6 million.

3.      On July 17, 2018, Juniper filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement, which recommends that Juniper stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Juniper management's financial projections, utilized by the Company's financial advisor, Rothschild Inc. ("Rothschild"), in its financial analyses (the "Management Projections"); (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Rothschild; and (iii) the sale process that resulted in the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Juniper stockholders need such information in order to make a fully informed decision whether to tender their shares in support of the Proposed Transaction or seek appraisal.

4.      In short, the Proposed Transaction will unlawfully divest Juniper's public stockholders of the Company's valuable assets without fully disclosing all material information

concerning the Proposed Transaction to Company stockholders.  To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Juniper is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Juniper.

9.     Defendant Juniper is a Delaware corporation with its principal executive offices located at 33 Arch Street, Boston, Massachusetts 02110.  The Company is a diversified healthcare

company with two core businesses: its Crinone franchise and its fee-for-service pharmaceutical development and manufacturing business, Juniper Pharma Services ("JPS"). Juniper's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "JNP."

10.     Defendant Cristina Csimma ("Csimma") has been a director of the Company since September 2010.

11.     Defendant James A. Geraghty ("Geraghty") has been Chairman of the Board since July 2015 and a director of the Company since May 2015.

12.     Defendant Jennifer Good ("Good") has been a director of the Company since September 2017.

13.     Defendant Mary Ann Gray ("Gray") has been a director of the Company since March 2016.

14.     Defendant Ann Merrifield ("Merrifield") has been a director of the Company since July 2015.

15.     Defendant Richard Messina ("Messina") has been a director of the Company since March 2018.

16.     Defendant Nikin Patel ("Patel") has been a director of the Company since September 2013 and Chief Operating Officer of the Company since April 2015. Defendant Patel co-founded JPS and served as its Chief executive Officer ("CEO") from 1998 until April 2015.

17.     Defendant Alicia Secor ("Secor") has been CEO and President of the Company since August 2016 and a director of the Company since 2016.

18.      Defendants Csimma Geraghty, Good, Gray, Merrifield, Messina, Patel and Secor are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19.     Catalent is a Delaware corporation with its principal executive offices located at 14 Schoolhouse Road, Somerset, New Jersey 08873.  It is a global provider of advanced delivery technologies and development solutions for drugs, biologics and consumer and animal health products.  Catalent's common stock is traded on the New York Stock Exchange under the ticker symbol "CTLT."

20.     Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Catalent.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Juniper common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

22.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

23.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of July 1, 2018, there were 11,104,757 shares of Company common stock issued and outstanding.  All members of the Class may be identified from records maintained by Juniper or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

24.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

    (a)     Whether defendants have violated Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder;

    (b)     Whether the Individual Defendants have violated Section 14(e) of the Exchange Act;

    (c)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

    (d)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

25.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

27.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Company Background

28.     Juniper, incorporated in 1986 as Columbia Laboratories, Inc., is a diversified healthcare company focused on growing its core businesses, Crinone and JPS.  Juniper is additionally using its intravaginal ring ("IVR") technology to advance a pipeline of product candidates to address certain unmet needs in women's health.

29.    Crinone, the Company's primary source of commercial revenue, is a progesterone gel for progesterone supplementation or replacement as part of an assisted reproductive technology ("ART") treatment for infertile women.  In May 2010, the Company licensed Crinone to Merck KGaA for all markets outside the U.S and it is currently approved for sale in over 90 countries. On January 8, 2018, Juniper announced the extension of its supply agreement with an affiliate of Merck KGaA, Darmstadt, Germany.   The amended agreement extends the supply term an additional 4.5 years and at least through December 31, 2024.  Moreover, in July 2010, Juniper sold its U.S. intellectual property rights to Crinone to Allergan for $62 million, a 10% royalty on future sales, and potential milestones related to regulatory achievements.

30.    The Company's second core business, JPS, was acquired by Juniper in September 2013 and is a pharmaceutical service business. It is a contract development and manufacturing organization specializing in the development of challenging small molecules.  JPS offers a range of technical services to a wide variety of pharmaceutical companies, from start-up biotechnology firms to global pharmaceutical companies.

31.    The Company also has commercial product and product development programs.  In addition to Crinone, the Company's product candidates include: JNP-0101, JNP-0201, and JNP-0301.  JNP-0101 is an IVR product candidate designed to deliver oxybutynin for the treatment of overactive bladder in women.  JNP-0201 is a segmented IVR product candidate containing natural progesterone and natural estradiol to be used for hormone replacement therapy in menopausal women.  JNOP-0301 is a natural progesterone IVR product candidate for the prevention of preterm birth in women with a short cervical length.

32.    On April 25, 2018, Juniper announced an exclusive worldwide license agreement with Daré Bioscience ("Daré") for the development and commercialization of the Company's IVR

technology platform, including its three preclinical IVR candidates.  In exchange for the license to research, develop and commercialize the IVR platform, Juniper will receive a one-time upfront payment from Daré of $250,000, annual license maintenance fees of $50,000 to $100,000, potential clinical and regulatory development milestone payments of up to $13.5 million, and sales milestone payments of up to $30.25 million for each IVR candidate.  The Company is also eligible to receive royalties based on future net sales of any of the IVR platform candidates.  Defendant Secor commented on the licensing agreement, stating, "[w]e are excited to have executed on our goal of finding a suitable partner to advance our innovative IVR portfolio, which will allow us to focus our efforts and resources on our core businesses, JPS and CRINONE®, in line with our strategic vision. . . ."

33.    On May 10, 2018, Juniper reported its first quarter 2018 financial and operating results.  In addition to extending the supply agreement with Merck KGaA, Darmstadt, Germany and executing the IVR license agreement with Daré, the Company reported strong financial results.  For the quarter, total revenues increased 38% to $15.5 million, compared to $11.2 million in the first quarter of 2017.  Jeff Young, Juniper's Chief Financial Officer, added:

> Growth in our core businesses has continued into 2018 with CRINONE® product revenues up 30% and revenues from JPS up 55% for the quarter ended March 31, 2018 versus the same quarter in 2017. . . We remain in a solid financial position, expect to continue to deliver double-digit growth in our core businesses, and to be cash flow positive for full year 2018.

**The Proposed Transaction**

34.    As part of its ongoing evaluation of the Company's business, the Board has from time to time, considered a variety of strategic alternatives to the Company's business strategies as an independent company, including the potential changes to the Company's strategy and direction,

and potential strategic transactions, including product acquisitions and a possible sale of the Company.

35.    On September 7, 2017, the Board met and approved a strategic reprioritization, as a result of which the Company would focus its resources on the core businesses of the manufacture and supply of Crinone progesterone gel and its contract development and manufacturing organization ("CDMO") business run through JPS, and reduce its expenditures on research and development of new therapeutic product candidates, including an approximately 8% reduction in total headcount primarily in the area of new product development.  The Board also instructed Company management to begin interviewing financial advisors to advise the Board with respect to its evaluation of potential strategic opportunities, including a potential sale of the Company.

36.    On December 14, 2017, the Board approved the engagement of Rothschild to assist the Company in reviewing its strategic plan and business alternatives, including a potential sale of the Company.  The Board also approved the engagement of Chestnut Securities, Inc. ("Chestnut") to provide certain supplemental advisory services in connection with the Company's strategic process.

37.    On January 23, 2018, the Company received an unsolicited, non-binding indication of interest from a hedge fund owning an interest in a company in the pharmaceutical space ("Party A") indicating Party A's interest in acquiring the Company in an all-cash transaction for $8.20.

38.    Beginning in February 2018, the Company embarked on a sale process.  By March 15, 2018, the first round deadline for preliminary non-binding indications of interest, 38 parties (which included Catalent, Party A, and parties referred to in the Recommendation Statement as "Party B," "Party C," "Party D," "Party E," "Party F" and "Party G") had expressed a potential interest in pursuing a strategic transaction with the Company and executed

confidentiality agreements with the Company. Six of these 38 parties—Catalent, Party A, Party B, Party C, Party E and Party F—delivered written preliminary non-binding indications of interest to the Company on March 15, 2018.

39.     On June 12, 2018, Catalent, Party G and Party B submitted final written offer letters. Catalent indicated a price of $11.00, Party G indicated a price of $11.00 and Party B indicated a price of $11.50.

40.     On June 13, 2018, the Special Committee determined to move forward exclusively and expeditiously with Party B, if among other things, Party B would increase its offer price to $11.75.

41.     On June 14, 2018, Party B communicated that the terms of the Company's counterproposal, including the increase in its offer price of $11.75 were acceptable and that same day the members of the Special Committee agreed that it was advisable to move forward with Party B.

42.     On June 15, 2018, Party B notified Rothschild that it would need to lower its June 14 proposal to a price less than $11.75 in order to account for certain estimated transaction expenses and potential changes in the Company's net working capital that Party B had not incorporated into its financial model.

43.     On June 20, 2018, Party B submitted a revised written proposal to the Company indicating an all-cash purchase price of $10.85.

44.     On June 21, 2018, the Company and Party B executed an exclusivity agreement.

45.     Thereafter, on June 25, 2018, Catalent submitted a revised proposal indicating that it was prepared to increase its offer price to $11.25.  Party B did not indicate a willingness to increase its offer price above $10.85 and after the exclusivity period expired on June 27, 2018, the

Company proceeded to negotiate with Catalent, resulting in Catalent's June 28, 2018 offer of $11.50.

46.     At a July 2, 2018 Board meeting, Rothschild rendered its fairness opinion and the Board approved the Merger Agreement. Later on July 2, 2018, the parties finalized and executed the Merger Agreement.

47.     On July 3, 2018, Juniper issued a press release announcing execution of the Merger Agreement. The press release stated, in relevant part:

> BOSTON, July 3, 2018 -- Juniper Pharmaceuticals, Inc. (Nasdaq: JNP), a diversified healthcare company with core businesses of its CRINONE® (progesterone gel) franchise and fee-for-service contract development and manufacturing organization (CDMO) Juniper Pharma Services (JPS), today announced it has entered into a definitive agreement with Catalent, Inc. for Catalent to acquire all of the outstanding shares of Juniper at a price of $11.50 per share in cash.
>
> The transaction represents a total equity value of approximately $139.6 million on a fully-diluted basis, and a premium of 59.7% to Juniper's unaffected share price on January 30, 2018, the last trading day prior to the date on which Juniper announced its intention to explore strategic alternatives.
>
> * * *
>
> "We've been impressed with the strength of the Company's management team, depth of scientific experience and demonstrated success in GMP manufacturing and a broad base of enabling technologies. Juniper's high caliber platform represents a solid addition to our portfolio and we look forward to joining forces," continued Mr. Arnold.
>
> **Terms of the agreement**
>
> Under the terms of the merger agreement, Catalent will promptly commence a tender offer to acquire all of the outstanding shares of Juniper's common stock at a price of $11.50 per share. The closing of the tender offer will be subject to a majority of Juniper's outstanding shares being tendered in the tender offer. In addition, the transaction is subject to other customary closing conditions.
>
> Following completion of the tender offer, Catalent will acquire all remaining shares at the price of $11.50 per share through a second step merger. The closing of the transaction is expected to take place in the third quarter of 2018.

## Insiders' Interests in the Proposed Transaction

48.    Catalent and Juniper insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Juniper.

49.    The Company's directors and executive officers will receive substantial cash consideration in connection with tendering their shares of Company common stock in the Tender Offer, as set forth in the following table:

| | Number of Shares (#) | Cash Value of Shares ($) |
|---|---|---|
| **Executives** | | |
| Alicia Secor(1) | 16,205 | 186,358 |
| Jeffrey Young | 3,263 | 37,525 |
| Nikin Patel | 198,134 | 2,278,541 |
| | | |
| **Directors (to the extent not listed above)** | | |
| Cristina Csimma | 27,199 | 312,789 |
| James A. Geraghty | 65,153 | 749,260 |
| Jennifer Good | — | — |
| Dr. Mary Ann Gray | 7,334 | 84,341 |
| Ann Merifield | 15,193 | 174,720 |
| Richard Messina | 219,108 | 2,519,742 |
| **All of our directors and executive officers as a group (9 persons)** | **551,589** | **6,343,276** |

50.    Additionally, Company insiders stand to reap a substantial financial windfall for securing the deal with Catalent.  Each outstanding Company option and restricted stock unit will fully vest and convert into the right to receive cash payments.  The following tables summarize the cash payments the Company's executive officers and directors stand to receive in connection with their equity awards upon consummation of the Proposed Transaction:

| Vested Company Stock Options | | | Unvested Company Stock Options | | | Company Restricted Stock Units | | |
|---|---|---|---|---|---|---|---|---|
| Shares Underlying Vested Company Stock | Weighted Average Exercise Price ($) | Aggregate Vested Company Stock Option | Shares Underlying Unvested Company Stock | Weighted Average Exercise Price ($) | Aggregate Unvested Company Stock Option | Company Restricted Stock Units (#) | Aggregate Company Restricted Stock Units | Total Equity Award Consideration ($) |

| | Options (#) | | Payment ($) | Options (#) | | Payment ($) | | Payment ($) | |
|---|---|---|---|---|---|---|---|---|---|
| **Executives** | | | | | | | | | |
| Alicia Secor | 144,375 | 7.05 | 642,281 | 318,125 | 6.96 | 1,443,094 | 87,650 | 1,007,975 | 3,093,350 |
| Jeffrey Young | 42,500 | 5.60 | 250,750 | 167,500 | 6.15 | 896,250 | 27,150 | 312,225 | 1,459,225 |
| Nikin Patel | 100,750 | 6.50 | 503,483 | 116,250 | 6.61 | 568,048 | 37,150 | 427,225 | 1,498,756 |
| **Directors (other than those listed above)** | | | | | | | | | |
| Cristina Csimma | — | — | — | — | — | — | 8,910 | 102,465 | 102,465 |
| James A. Geraghty | 80,000 | 7.22 | 342,800 | 20,000 | 5.15 | 127,000 | 15,594 | 179,331 | 649,131 |
| Dr. Mary Ann Gray | — | — | — | — | — | — | 8,910 | 102,465 | 102,465 |
| Ann Merrifield | — | — | — | — | — | — | 8,910 | 102,465 | 102,465 |
| Jennifer Good | — | — | — | — | — | — | 15,000 | 172,500 | 172,500 |
| Richard Messina | — | — | — | — | — | — | 5,625 | 64,688 | 64,688 |

51.     Moreover, if they are terminated in connection with the Proposed Transaction, Juniper's named executive officers are set to receive substantial cash payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| Alicia Secor | 1,146,240 | 2,451,069 | 15,109 | 3,612,418 |
| Jeffrey Young | 535,340 | 1,208,475 | — | 1,743,815 |
| Nikin Patel(4) | 754,581 | 995,273 | 578 | 1,750,432 |

## The Recommendation Statement Contains Numerous Material Misstatements or Omissions

52.     The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Juniper's stockholders.  The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in connection with the Tender Offer or seek appraisal.

53.     Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Juniper's financial projections, relied upon by Juniper's financial advisor Rothschild; (ii) the data and inputs underlying the financial valuation analyses that support

the fairness opinion provided by Rothschild; and (iii) the background process leading to the Proposed Transaction.  Accordingly, Juniper stockholders are being asked to make a decision whether to tender their shares in connection with the Tender Offer or seek appraisal without all material information at their disposal.

***Material Omissions Concerning Juniper's Financial Projections***

54.     The Recommendation Statement fails to disclose material information relating to the Company's financial projections provided by Juniper's management and relied upon by Rothschild for its analyses.

55.     For example, the Recommendation Statement discloses that "Unlevered Free Cash Flow is a non-GAAP financial measure defined as earnings before interest after tax, less increases in net working capital, plus depreciation and amortization, less capital expenditures." Recommendation Statement at 40.  The Recommendation Statement further discloses the line item projections that were used to calculate the Company's unlevered free cash flow – EBIT, cash taxes, depreciation and amortization, capital expenditures and net working capital.  However, the Recommendation Statement then sets forth that "[i]n calculating such unlevered, after-tax free cash flows, share-based compensation was treated as a cash expense."  *Id*.  Yet, the Recommendation Statement fails to disclose the share-based compensation expense over the projection period which was treated as a cash expense in calculating the Company's unlevered free cash flows; and further fails to disclose if the unlevered free cash flow figures disclosed in the Recommendation Statement reflected the treatment of share-based compensation as a cash expense or were further reduced for share-based compensation being treated as a cash expense. This distinction is critical as Rothschild used the Company's unlevered, after-tax free cash flows

for its *Illustrative Discounted Cash Flow Analysis*, which is the premier and most reliable valuation tool that a banker can employ in a merger context.[1]

56.     In addition, the Recommendation Statement sets forth the probability adjusted IVR forecasts for 2018-2037, but fails to quantify or disclose the risk-adjusted rates provided by the Company and applied to potential future clinical and regulatory development milestone payments, sales and potential future royalties based on future net sales.  The Recommendation Statement further fails to disclose the clinical development success rates provided by the Company based on published success rates from sources from 2006-2015.

57.     The omission of this information renders the statements in the "Certain Prospective Financial Information" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Rothschild's Financial Analyses***

58.     The Recommendation Statement describes Rothschild's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Rothschild's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Juniper's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Rothschild's fairness opinion in determining whether to tender their shares in favor of

---

[1] *See, e.g., See Onti, Inc. v. Integra Bank*, 751 A.2d 904, 916 n.53 (Del. Ch. 1999) (indicating that the Delaware Chancery Court has employed the discounted cash flow method as a method of valuation and that experts consider it to be the preeminent method of valuation); *Neal v. Alabama By-Products Corp.,* C.A. No. 8282, 1990 Del. Ch. LEXIS 127, at *20 (Del. Ch. Aug. 1, 1990) (noting that experts consider the discounted cash flow method to be the preeminent method of valuation).

the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Juniper's stockholders.

59.     With respect to Rothschild's *Illustrative Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) quantification of the inputs underlying the discount rate range of 14.0% to 16.0%; and (ii) quantification of the share-based compensation that was treated as a cash expense in calculating the Company's unlevered, after-tax free cash flows.

60.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

61.     The omission of this information renders the statements in the "Opinion of the Company's Financial Advisor" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

62.     In addition, the Recommendation Statement omits material information relating to the sale process leading up to the Proposed Transaction.

63.     Critically, the Recommendation Statement fails to expressly indicate whether the confidentiality agreements including standstill provisions that Juniper entered into with 30 prospective bidders, excluding Catalent, Party A, Party B, Party C, Party D, Party E, Party F, and Party G, are still in effect and/or contain "don't ask, don't waive" ("DADW") standstill provisions

that are presently precluding each and every one of these prospective bidders from making a topping bid for the Company.

64.     The disclosure of the terms of the standstill provisions in the confidentiality agreements Juniper entered into with potential buyers is crucial to Juniper stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

65.     The omission of this information renders the statements in the "Background of the Transactions" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

## CLAIMS FOR RELIEF

### COUNT I

**Class Claims Against All Defendants for Violations of
Section 14(d) of the Exchange Act and SEC Rule 14d-9**

66.     Plaintiff repeats all previous allegations as if set forth in full.

67.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Juniper stockholders to tender their shares in the Tender Offer.

68.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

69.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

70.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.    Indeed, while defendants

undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

71.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision whether to tender their shares if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Class Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

72.    Plaintiff repeats all previous allegations as if set forth in full.

73.    Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

74.    Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer or seek appraisal.

75.    As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff

has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek appraisal.

## COUNT III

### Class Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

76.    Plaintiff repeats all previous allegations as if set forth in full.

77.    The Individual Defendants acted as controlling persons of Juniper within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Juniper and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

78.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

79.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Recommendation Statement at issue contains the

unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

80.    In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

81.    By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in its favor on behalf of Juniper, and against defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: July 26, 2018

/s/ Mitchell J. Matorin

Mitchell J. Matorin (BBO# 649304)
MATORIN LAW OFFICE, LLC
18 Grove Street, Suite 5
Wellesley, Massachusetts 02482
(781) 453-0100
mmatorin@matorinlaw.com

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*